Good morning, Your Honor. May it please the Court, my name is Adam Kogan, and I represent the appellant, Jermaine Warren, in connection with this matter. I would respectfully request five minutes of rebuttal time. Granted. Your Honors, in the plea agreement that was drafted by the government, the government promised Mr. Warren that it would not invoke the higher if Warren agreed to plead guilty. Based in part on those promises, Mr. Warren did plead guilty. And at sentencing, Warren argued a fairly common argument that the Court is encountering now, that the court should, the sentencing court, should eliminate the crap powder disparity in sentencing Warren. Now that's not, at its first blush, so easily done as it is said. Warren was a career offender, and therefore the 2D1.1 drug quantities don't automatically convert into the career offender context. What Warren argued, however, was if this case involved 76.1 grams of powder cocaine as opposed to crack, I would be looking at a sentence of 20 years without the government filing the 851 notes. If you correspond that statutory maximum to the career offender guidelines, my base offense level would, instead of being a level 37, it would be a level 32. With my two points of acceptance responsibility, I would be at a level 30 and looking at a guideline range of 168 to 210 months. The government countered that blatantly, not only in their oral argument at sentencing, but in their legal argument. I was wrong, that Mr. Warren was wrong, that if you look at his offense as involving powder cocaine, that instead of looking at a 20-year maximum for his offense, he would be looking at a 30-year maximum. Now the only way you can get from 20 to 30 years under the drug statutes, Title 21, U.S.C. Section 841, is through the effective filing of an 851 notice. And I would submit to the court that's effectively what they did. They brought to the court's sentencing consideration the prior conviction that they had promised that they would not use to increase his sentence. They promised they wouldn't use it, or they promised they wouldn't file? Well, Your Honor, the language is laid out in the plea agreement. It's not very long. The United States agrees not to file an information pursuant to 21 U.S.C. Section 851, stating prior convictions as a basis for increased punishment. Well, how can the promise not to file it mean, and we won't make any reference to it, and we'll pretend that all that other stuff doesn't exist? I'm not saying that they couldn't make reference to his prior conviction. I mean, that would be silly. It's a sentencing. The person's criminal history is obviously a consideration in their sentencing, a driving force behind their sentencing. But what I'm saying is that in Warren's position, Warren reasonably would have believed that that promise in the plea agreement, juxtaposed with the language of 851 and the language of 841, meant that the government wasn't going to argue that his offense was that which would result through the filing of an 851. I mean, did they literally file it? No, but they didn't have to. They got the effect that they needed without filing it, convincing the district court that if this were a powder offense, that it would face those elevated statutory maximums. So I would submit, Your Honors, that whether they actually filed a written notice, I mean, if this case were a written notice case, obviously I don't think we would really be here. I mean, it would be a, there would be no, I mean, it would be so blatant. But in the context of a plea agreement argument, the law is, it's one of the few areas of the law, particularly in federal criminal law, that is weighted for a couple of reasons. One, we're going to strictly construe a plea agreement against the government, because it is the drafter, and because we enforce the rule of law, and because the defendant is giving up so much, because of the vast disparity in power that the government has in negotiating these agreements, and because our reliance on these. If we don't have plea agreements in federal criminal court in this district, then we'd shut down. I mean, we need to have plea agreements, and we need to have defendants who can believe in the promises that the government makes in those plea agreements. And they can't be allowed to skirt with the few things that they promise to do. They just can't be allowed to do that. Your Honors? And what's the specific relief that you seek, as to vitiate the plea agreement? No, absolutely not. Or to just press the government to adhere to what they promise? That is exactly the relief that Warren seeks, is specific enforcement of the plea agreement. To have the chance to argue is the elimination of the crack powder disparity. In this case, Third Circuit precedent demands that it would go back before a different district court judge. That's just simply the law from Santabello and this court's precedent on. But that is what he wants in this case. And it's not an unreasonable thing for him to ask for that. Plea agreements are not strictly construed against the defendant. They are what the defendant reasonably believes. But they're contracts, right? They are contracts. The law governs, and it seems to me you're asking us to import into this written contract all sorts of covenants that aren't there. The covenant is, we won't file. And there's no doubt they didn't file.  And in sentencing, they're giving the sentencing court context by explaining how things would have shaken out. It's not the context I object to. It's the straightforward argument that convinced the district court that if this were a powder case, Warren would be looking at 30 years. When the government told Mr. Warren that it would not be... How do you know that convinced the district court? 30 years is 360 months, right? No, no. That would be the statutory maximum from which the career offender guideline would have been derived. And he sentenced him to 248. Right, but the court concluded, and I can find the page of the record. And that's within 248, so within guideline sentences. No, but the court specifically said, and the government pointed it out, that it concluded that the analogous guideline provision would be the 210 to 262. So the court agreed with the government. The district court says it specifically. To paraphrase, the court says... Well, I think what Judge Hardiman is talking about is the government gave the court a point of information. That point of information, the court could have accepted or rejected, or gone anywhere in between. Some permutation of it. You probably would agree that there's a permutation of it. Given that, the government hasn't trampled on its contract obligation. It's merely informed the court, which is something that the court often asks the government to do. But the court promised Rohr, in effect, that it would not use 851 to ratchet up his penalties. Right? That's what they said. The court easily could have said, thank you for that information, and done whatever it is that it chose to do. And if the court did that, then I would have no argument, independently. But what I am arguing, Your Honors, is the court was convinced by the U.S. Attorney's argument, an argument that actually misstated the law. When pressed, this was something that you could tell was troubling the district court, because he wasn't sure as to whether this would really be the right numbers. It's kind of a complex argument. And he asked the court, is Mr. Kogan right, in effect? And the U.S. Attorney's Office responded, no. The 851 notice only ratchets up the mandatory minimum. And in the context of the argument that I was making, that you have to, as part of, at the time that this was coming about, Your Honors, you have to remember the context of this. And Judge Kogel had just decided the Cletus Russell case, and this area was developing. And what Judge Kogel decided was, you know, in these crack cases, we're going to basically create an alternative guideline. You know, what would the guideline range be if this were a powder case as opposed to crack? That was his step one in Cletus Russell. Suppose the issue would have been the court asked the government, and then the government responded in the same way that it did at the hearing. Would you have the same argument that you have now? It would be a little bit of a different argument, Your Honor. I think the court always has an attorney for the government, and the court always has the right to expect candor in the tribunal. You're not giving the district court much credit here, right? You're saying that the government, you know, grabbed the district court by the nose and pulled them along and it ended up with a sentence that you think is outside of what you bargained for. But, Your Honor, the record can't be disputed that I said, if you do this in powder, it's 168-210, the 210. And the government said, no, Mr. Kogel's wrong. If you do this in powder, it's 210-262. And the court explicitly found it was 210-262 when it made its ruling. That is plainly in the record. It says 210-262. And from there, it fashioned the appropriate sentence. Could the court have asked, you know, what its thoughts were about crack and powder? I think the court, the U.S. attorney then would have had to, did the government make an argument or did it provide information? It made an argument. It made it in written form. It made it in graphic, oral form. And when I said, no, that it violates the plea agreement, they said, you're incorrect, Mr. Kogel. It only applies to the mandatory minimum. And that directly refuted my argument, and it directly refuted the promise that they made to Mr. Warren that was the basis for his change of plea. Thank you, Mr. Kogel. We'll hear you on rebuttal. Mr. Eberhardt. Good morning. At peace the court, I'm Robert Eberhardt, attorney on behalf of the Appellee United States. The relevant portions of the plea agreement are in the record, appendix page 429, and I'd like to refer to it very briefly. There simply was no violation of the plea agreement. The plea agreement specifically, as the court pointed out a few minutes ago, requires no fouling of an 851, and it's unrebutted and unchallenged that there was no fouling of an 851. The plea agreement did not in any way bind the district court from its Gunter responsibilities, its Cooper responsibilities, its Honko responsibilities, its Gall responsibilities to do a guideline analysis and determination. So there's nothing in the plea agreement that says to the district court, we're taking away your responsibility as a sentencing judge to do what you're required to do to calculate a guideline sentence, and that's exactly what the court did here. I would also point out that counsel was well aware of the government's position with regard to sentencing prior to sentencing but never filed a motion to withdraw the plea. So there was never a request to withdraw this plea, no matter what the remedy requested here before this court. I'm a little interested, frankly, in talking about the Miranda issue. I thought you would be, John, so I was kind of trying to respond to this issue very briefly and move on to the Miranda issue. Thank you. Let's move on to Miranda. Why isn't the iteration of the Miranda warnings given to Mr. Warren at the station house violative of the Constitution? It seems to me that here's what I'd like you to put in context. Obviously, there's a circuit split since Miranda on this particular issue. Some of the cases are a little older, admittedly, but my count seems to be four circuits on one side, four circuits on the other. You'll edify me if I'm wrong. And we have the most recent iteration of the Supreme Court in power. Now, it seems to me that when you're talking about before, with regard to right to counsel, before or during that the iteration in power from the Supreme Court covers that. Obviously, Justice Stevens disagreed vehemently in the dissent, but we'll just stay with the majority for the moment. It covered it, and it wasn't temporarily because. It said before questioning, and then it said, you can invoke any of these rights at any time during the process. And obviously, right to an attorney was specifically stated in the power so that you can use that catch-all phrase and apply it to any of the rights at any time during the process. Now, as I see it, that's not what we have here, and I'm troubled by it. So help me. We readily admit in our brief that the Powell language, both language from Powell, the advisement given in Powell, and the advisement given to Warren are set forth on page 23 of our brief. There is a difference. We readily recognize that. Within context, and, Your Honor, you are correct, the difference between circuits was recognized by Justice Stevens in his dissent in footnotes 8 and 9 of the Powell opinion. I suggest that the Powell opinion puts to rest the issues that are raised in footnotes 8 and 9 to the extent, and I find it very enlightening, to go back 44 years to June 13, 1966, shortly before I started law school, I don't want to tell you where I was in June of 1966. Well, I was a legal intern in the DA's office the following summer, and I remember talking to police officers who were now in this revolution that changed their lives as police officers. But since you harken back to Miranda, Miranda clearly talked about having the right during interrogation. Actually, not exactly. The reason I say that is you disagree with the quotes in Powell from Miranda? I don't disagree with the quotes from Miranda. What I would emphasize is Justice Ginsburg's not only opinion, but her questioning during the oral argument, which I found very enlightening in the last few days. Justice Ginsburg goes back and says, what about Miranda? You know, we have to go back to the classics a little bit. We have to go back to the original iteration of what Miranda told us. And one of the important things that she found important was that the FBI's statements of rights was looked at by the court in Miranda as consistent with what we are deciding today. And the importance to me of that was what she found consistent and what she really emphasized at the oral argument of Powell was that the importance is that the right to counsel be not restricted in any way by a statement to an interrogation suspect who has given the Miranda advisements that the right to counsel, the right to remain silent, are not in any way conditional. And that they are unlimited in their scope. And I would suggest that Sargent take this. But your language on its face is deficient if you are using that as the measuring stick. It's not deficient in the sense that it does not restrict in any way the right to counsel. It does not. And, in fact, what's the purpose of the modifier before with no catch-all, as you have in Powell, and no other edification for the person who's receiving the advice. Right. I know the context of this case is not the deciding factor, but I would just point out here that we do not have a freshman in this presentation of the issue because Mr. Warren, when he was asked, do you want to speak, do you want to talk, Sargent Dacus says, I had to slow him down. He wanted to talk. I had to tell him. Fair enough. He's a pro. But so is the Sargent. And they're at the station house. He could have got his card. Right. And just as Justice Ginsburg says in Powell, it would be the best of worlds. We would not be here today, probably, and this court would not want to hear argument if the card was read and it contained the additional words with regard to during or present or those words. I would point out that there are cases in that footnote eight and footnote nine in Justice Stevens' dissent where the placing of those words, during, present, raised other types of problems and issues in those cases. And, frankly, I read all those cases again in the last few days, and most of those cases have other problems in them. Absolutely. I mean, we're all worried in those cases and now about various iterations of what's fairly straightforward if you pick up the card. Right. And I recognize that this is this court's first post-Florida versus Powell situation to look at. And I would suggest, however, that the important thing that Justice Ginsburg recognized, and I would recommend the oral argument in Powell as some basis for an examination of this whole issue because the court was concerned with the fact that there be no limitation upon the right to counsel. But isn't the catchphrase the solace that she looked for and that she found that's not here? I think it is here to a certain extent. The question is, should you decide to talk to me, you can stop the questioning at any time. I think there is an implication there. Just like Justice Ginsburg said, it would be counterintuitive to suggest that a hearing those words would believe that he didn't have the right to counsel during questioning. But she relies on the fact that in Powell there is this statement, you have the right to use any of these rights at any time you want during this interview. She's really not making all due deference to Justice Ginsburg, who everyone loves. I mean, it's right there for her. I mean, that basically says every right I've told you at any time in the continuum you may invoke it, and knowing that you're covered. And if we agree that Powell's the most recent iteration on this and that it speaks to the very issue that's concerning both of us as we try to grapple with this, then when I look at the language used by the sergeant here, should you decide to talk to me, you can stop the questioning at any time, doesn't inform me with regard to the right to an attorney. That's after he's been fully informed that you're right to counsel before any questioning and you have the right to counsel. You have the right to an attorney. You have the right to counsel, and one will be appointed to represent you without charge before questioning, if you wish. Now, I don't want to agree to disagree because I want to continue to grapple with this, but as you look at the different circuits that have addressed this, most that have addressed the jury have found the absence of that language to be a failure of the Constitution. Well, I would suggest, again, going back to Miranda, is important in analyzing. Powell is important, but Powell does not say this is the floor, this is the minimum that has to be stated. What Powell says and what Justice Ginsburg writes in Powell is that this additional language adds to the totality of the circumstance in which to determine whether or not a reasonable person hearing these words would understand that they have an unfettered right to counsel. And I suggest, based on the wording here, that the district court analyzed the same cases that Justice Ginsburg did, Prysock and Duckworth, and analyzed and said, we don't analyze this like a plea agreement. We don't analyze it that way. We analyze it in a totality environment. Fair enough, but you would agree, as I think you must, that both Prysock and Duckworth spoke specifically about the right to an unquestioning, and they mentioned that language. Right, but they also had qualifying language that raised the question of whether or not a reasonable person hearing that additional language, like I forget whether it was Duckworth or Prysock now, but one of them, when we go to court, you have the right to counsel provided when we go to court. And the Supreme Court said that additional language, which may have been somewhat qualifying, did not dampen the general statement that you have an unfettered right to counsel. And I think that's what I would emphasize. I think that's what Justice Ginsburg emphasized. I would love to have the words during or present in the statement that was made to Mr. Warren. Is your position that having before in your iteration, this case's iteration, covers the notion of during? I mean, the only qualifier here is before. How is one, without the catch-all language, to infer that it extends beyond that? That's the real issue. Yeah, I think to me, again, it's counterintuitive to suggest that a reasonable person hearing you have a right to counsel before you begin a questioning process or interrogation process would suggest that it is a springing and evolving and disappearing right to counsel and is not a permanent right to counsel. I think there's a feeling of permanency of the right to counsel that is extracted from this statement that's made to Mr. Warren. Again, I recognize that because he's not a freshman and because he's eager to speak. He wants to make a deal. He wants to give up his source, and he wants the sergeant to not even give him grand warnings because he said, I know them. I know my rights. Forget about the pro for a minute. The person on the street, it's your view that merely telling them that you have a right to have an attorney before would inform them, without a catch-all and without anything else, that they would have the right to consult that attorney during the process. That's your position. As long as the police officer does not make any other potentially qualifying statement with regards to the right to counsel. I don't want to dominate anymore. I appreciate the opportunity. Thank you, Mr. Eberhardt. Mr. Kogan. Just briefly, Your Honor. I think the court is correct in the position that you're taking. I think the inference. I'm not taking a position. I'm asking a question. Well, I apologize, Your Honor. I think I misspoke there. But the question that you're asking, I think, in response to the government, I think the inference that would arise is that the interrogation, based on the warning that was given, was, in effect, an isolated event. It's saying to the defendant, yes, you have the right to talk to a lawyer before the interrogation, but it implies, does it not, that once the interrogation starts, that that right no longer exists. Sure, can you stop the interrogation and go out and speak to the lawyer? Well, perhaps that's an inference that could arise from the warning that Sergeant Dacus gave. But I think that by putting that word in there before, you are conditioning it and essentially setting it up as the. But that's a different case. Our case doesn't have the word before, right? Well, the warning that was in this case was a before warning. I thought it says you have the right to an attorney. Am I reading it wrong? Right. I told him that he had the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. If you cannot hire an attorney, one will be appointed to represent you. You have the right to an attorney is what Warren was told. That's correct. There's no temporal limitation on that. And Powell was told you have the right to talk to a lawyer before. Right. So if there's no temporal limitation in our case, why would there need to be some sort of subsequent clarification that says, oh, and you have the right to these rights at any time throughout? Well, in response to Judge Greenaway's point and in response to the government, I think the language created that inference that he did not have that right to counsel during the interrogation. So you want us to read you have a right to an attorney to mean you have a right to an attorney at some point in our discussion, but not throughout our discussion. That is a reasonable objective inference that the defendant could have taken from the Miranda warning that Sergeant Dack escaped him. Were you quoting from the language used here? Yes. Is there a reference to before? That's the question. No, it is not. That is more the Supreme Court case that was just decided. That was the Supreme Court case. The language is quoted on page 28 of my brief, and it's quoted at the record as well. Again, Your Honor, the point, and just to respond briefly to two points that the government raised with respect to the plea agreement argument. The first is what was the issue in this case? At the time of the ---- I'm sorry. Let me just get through one threshold issue on that before we hear you tell us what you want to say there. What was your client's guidelines range? Literally? What did the PSR say his guidelines were? The PSIR said that his guideline range, I believe, was 327 months, Your Honor. I apologize. I have to look for one second. I thought it was 292 to 365. 292 to 365. That's what it was. And was there an objection to that? There was. I think that's a yes or no question. Well, was there an objection to the literal, rudimentary calculations of the sentencing guideline based upon that? No, there wasn't. All right. So both sides agree that his guidelines range is 292 to 365. Literally. And then you go to sentencing, and you put forward all kinds of good arguments as to why, under Kimbrough, et cetera. And Spears. And Spears. You should come down off of that. Yes. And the trial judge agrees and gives your client 268. Excuse me, 248. Right? Consistent with Gunter. Consistent with. Just before you go on that, am I correct on that? Could you say that again, Your Honor? I'm not sure that. I want to make sure I have my facts right. Yes. Guidelines range is 292 to 365. Correct. There are all sorts of good arguments made under Kimbrough and Spears that that's too high, this is crack, different. Yes. Opportunity to come down. Trial judge agrees and goes downward to 248. That's correct. 42 months, 44 months below the bottom of the guidelines. Yes. And your argument is that the government violated a plea agreement covenanting not to file an 851 because in arguing what a reasonable adjustment under Kimbrough or Spears might be, the court ought to keep in mind what this would have been even under power. Yes. The U.S. attorney convinced the court, and I'm quoting from the record, that is if a powder cocaine statutory maximum of 30 were applied, and that is an appropriate maximum, it would produce an advisory guideline range with a base offense level of 32,  The court agreed with the government's argument, and the government's argument was premised on the 851 effect. Absent the 851 effect, a 76.1 gram case was a 20-year maximum, which would effectively yield a guideline range of 168 to 210. When the government argued that the equivalent statutory maximum based on Warren's offense would carry with it a 30-year maximum based exclusively on the effect of his prior conviction, I'm submitting that that argument, making that argument and convincing the court of that position violated the promise that was made to Warren not to make that argument, not to use 851 to increase his sentence. That was what he drew from that. That's a reasonable inference to be drawn from the statute and from the plea agreement, and when the court then sentenced him, concluding first that the government was right, that the crack powder disparity eliminated in this case yields a 210 to 262-month range. I mean, how can that not be a violation of his plea agreement? The effect that they could have gotten from the filing of an information was effectively done without it. I mean, they promised him that we're not going to do this, yet they did it, and that was the argument that convinced the court to sentence him to a higher range. Thank you, Mr. Kogan. We understand your position. Thank you to counsel for excellent briefing and argument. We'll take the matter under advisement.